native, on account of Mr. Holker's permanent residence in another state; but being adopted, the plaintiff is bound by it. and cannot, even on the principles of the Pennsylvania practice, avail himself of Mr. Holker's casual visit to Philadelphia, without discontinuing the first action. What, indeed, would be the condition of the defendant, who is arrested, if a different construction were to prevail? He might be ready for trial; he might be able to prove that there was no cause of action; he might be desirous to avoid trouble and expense by a prompt confession of judgment; or he might be the principal, and the non-appearing defendant merely a surety, so that he could derive no advantage from the arrest of his colleague;—and yet he would be exposed to an indefinite term of imprisonment, or be held with his bail for an indefinite period in suspense, at the pleasure of a plaintiff, who should chuse to calculate upon any remote possibility of bringing all the defendants into court. The injustice and oppression to the defendant, furnishes a strong argument against the allowance of such a privilege to the plaintiff.

It is conceded, however, by the plaintiff's counsel, that the motion would be irregular, unless leave is given to file common bail for Mr. Holker, as of April term, 1792, when the original action was instituted. But why should such a retrospect be allowed? Mr. Holker was not then arrested; and shall the court countenance a mere fiction;—a fiction not indispensable to justice, unknown to the law, and directly adverse to the truth of the case, exhibited for a number of years upon the record? No:—I am an enemy to every species of fictions. The fictions which have been incorporated into the law by long usage, (and, I believe, the cases of ejectment and common recovery afford the only fictions recognized in America) must be sustained; but as far as I can prevent the introduction of novelties of this nature, I shall be assiduous to do so. All the entries upon the record were true and regular at the time of making them. There is, therefore, no error to amend; but the court is asked, for the convenience of the United States, arbitrarily to abolish the writ and its return, the declaration, the issue, and the continuances; and not only to undo all that has been previously done, but by an entry of common bail, to ingraft, in effect, this falsehood upon the record, that Mr. Holker was arrested in April, 1792. But after all, I will not anticipate an opinion, upon a case in which an alias shall be regularly taken out, and continued, from term to term: though my present impressions are unfavorable, even on that ground to the plaintiff's doctrine. The multiplication of suits, the perplexity of entries, and the oppressive vexation of successive bail bonds, each for the full amount of the demand, are effects that could not be easily tolerated in the administration of justice. I have not heard, during the discussion, of any principle, or usage, of law, that would

reconcile them to my mind: but this is not the foundation of the present decision; for, the irregularity in the teste and return of the alias capias is a sufficient reason to reject the plaintiff's motion.

The rules discharged.[4]

CHASE, Circuit Justice. The whole proceeding is to my mind unintelligible and irregular. There is only one of the parties to the contract, and only one of the defendants named in the writ before the court; and no process of outlawry has been prosecuted against the others; how shall we proceed to give judgment? Again: to what is the plea of non assumpsit to be applied? Is it, that the appearing defendant did not assume himself, or that he did not jointly assume with the other defendants? And how comes the plea of the statute of limitations to be added, without the leave of the court? But the counsel will have time to reflect upon these difficulties. For, the jury are not sworn, even in this irregular state of the record, to try the issues between the parties; and therefore, the court, on its own authority, will direct the juror last qualified to be withdrawn.

A juror was, accordingly, withdrawn, and the action continued till the next term.

## Case No. 15,993.

UNITED STATES v. PARKER.

[See Case No. 15,735.]

UNITED STATES (PARKER v.). See Cases Nos. 10,750 and 10,751.

## Case No. 15,994.

UNITED STATES v. PARKHILL.

[2 Wkly. Notes Cas. 604, note.]

District Court, W. D. Pennsylvania. June 15, 1875.

INTERNAL REVENUE OFFICERS—VISITORIAL POWERS—EXAMINATION OF NATIONAL BANKS.

[Visitorial powers are not conferred upon the internal revenue officers, under Rev. St. §§ 3177. 5241, whereby they would be authorized to examine the checks of a national bank.]

In this case the defendant [the cashier of the Monongahela National Bank of Brownsville, Pennsylvania] refused to allow a deputy collector of internal revenue to examine the bank's checks. On the trial the district judge directed the jury to find a verdict pro forma for the plaintiff, subject to the opin-

[4] The cause (which was indebitatus assumpsit) came on for trial before CHASE and PETERS, Justices, at April term, 1798, when, after the opening was commenced by Rawle, for the plaintiff, it was discovered that the plea of "non assumpsit" was entered in short, and that the statute of limitations had, also, been pleaded; though the jury were only sworn to try the issue, and not the issues, joined between the parties.

ion of the court upon the question of law whether, under the acts of congress, visitorial powers over national banks are conferred upon internal revenue officers.

Upon the argument on the point reserved

Mr. Reed, for plaintiff, contended that such powers were vested in revenue officers by Rev. St. § 3177, and that Id. section 5241 did not exclude them therefrom. ,

Mr. Sweitzer, for defendant, argued these two propositions: (1) That section 37 of the act of June 30, 1864, (Rev. St. § 3177 [13 Stat. 238]), did not, in terms or by fair implication, extend to or include national banks; (2) that national banks are protected by positive statute against any other visitorial powers than such as are authorized by the national bank act, and such as are vested in courts of law and chancery.

Before McKENNAN, Circuit Judge (sitting as assessor), and McCANDLESS, District Judge.

THE COURT ordered judgment to be entered for the defendant upon the point reserved.

---

## Case No. 15,995.
### UNITED STATES v. PARKS.

[Cited in Re Crittenden, Case No. 3.393. Nowhere reported; opinion not now accessible.]

---

## Case No. 15,996.
### UNITED STATES v. PARKS.
[See Case No. 10,764.]

---

## Case No. 15,997.
### UNITED STATES v. PARMELE.
[1 Paine, 252.] 1

Circuit Court, D. Connecticut. April Term, 1810.

PRINCIPAL AND AGENT — CONTRACT IN AGENT'S NAME.

No action will lie in the name of a principal, on a written contract made by his agent in his own name, although the defendant may have known the agent's character; and a demurrer, in such a case, to the declaration, where the United States were the plaintiffs, was sustained.

[Cited in Chandler v. Coe, 54 N. H. 567. Distinguished in Gilpin v. Howell, 5 Pa. St. 50; Huntington v. Knox, 7 Cush. 375. Cited in City of Providence v. Miller, 11 R. I. 278; Sisson v. Cleveland & T. R. Co., 14 Mich. 496.]

[Error to the district court of the United States for the district of Connecticut.]

LIVINGSTON, Circuit Justice. This cause coming up on a demurrer to the declaration, if that be insufficient there must be judgment for the defendant below. This action is brought on a written contract of the defendant [John Parmele] by which he acknowledged to have received from one Stephen Rainy one hundred barrels of flour,

and agreed to be holden therefor to Alexander Wolcott, Esquire, or order, when called for, he paying ten cents per barrel storage. The objections to the declaration are, that no demand is stated to have been made of the defendant, nor any tender of the storage; and that no action will lie on this agreement in the name of the United States. The last objection is the only one which will be examined, for if that be well taken, the plaintiffs cannot recover in this suit. To obviate the force of this objection, which seemed to be felt, it has been said, that the action is not founded on the written contract, but on the right which vested in the United States by the seizure and condemnation of this property; and that the agreement was only made use of as evidence. Whether such an action could have been brought. this court is not bound to say; but the present suit is not of that description. It proceeds entirely on the defendant's contract, and the court, if it cannot discover his liability there. has no right to look for it elsewhere. It is also contended. that an interest in the United States is sufficient for the purpose of maintaining this suit. Such an interest, it is true, is disclosed in the declaration, so far as a seizure and confiscation could give it; but a science of these matters not being imputed to the defendant, it is not easy to perceive how he could suppose the public had any interest in the flour committed to his keeping. But if he knew every thing, it will not, in the judgment of this court, make any difference.

The United States, in a case of this kind, have no privilege or rights beyond those of an individual. If they sue on a contract, they are as much held to prove it as a private citizen, and any variance will be as fatal in the one case as the other. If this flour had been private property, but not that of Rainy or Wolcott, and it had been known to be so to the defendant, yet on this contract no suit could have been maintained, but in the name of the parties to it. None of the cases cited show that the cestuy que trust can bring an action at law, on an agreement made with his trustee. There is a fitness in confining the remedy to the party to whom the promise is made; in which case the judgment can always be pleaded in bar to another action. If the United States recover in this action, who can say that Parmele may not be vexed by another suit in the name of Rainy or Wolcott? The court, although it has an opinion, is not called upon to say who would have been the proper plaintiff in this case; but as no promise was made to the United States, it is sufficient to say, that they have altogether failed in making out their cause of action. The court cannot say, that an engagement to deliver this property to Rainy or Wolcott was one to deliver it to the United States, or to their marshal of this district. Where there is no

---

1 [Reported by Elijah Paine, Jr., Esq.]